## Case No. 3,828.
### DE TASTETT et al. v. CROUSILLAT.

[2 Wash. C. C. 132.] [1]

Circuit Court, D. Pennsylvania. Oct., 1807.

PRINCIPAL AND AGENT — NEGLECT OF AGENT TO EFFECT INSURANCE — DAMAGES — BILLS OF EXCHANGE—AGREEMENT TO ACCEPT — PAROL EVIDENCE—SET-OFF.

1. A merchant who is in the habit of insuring for his correspondent, and is ordered to make insurance, which he neglects, or imperfectly executes, is answerable as if he was himself the assurer, and is entitled to the premium.

[Cited in Le Roy v. Beard, 8 How. (49 U. S.) 468; Very v. Levy, 13 How. (54 U. S.) 359. Approved in Manny v. Dunlap, Case No. 9,047.]

2. When the insurance has been imperfectly made, and not altogether neglected, it may be questioned, whether the agent is liable for more than the damages, equal to the chance of the indemnity which would have been afforded by the exact execution of the order.

3. A claim of damages against an agent, upon the orders of the principal, which he is charged with neglecting, is not entitled to favour, if the order has been couched in doubtful terms.

4. If a reasonable diligence was used by the agent to effect the insurance, he is not liable.

5. The neglect of the agent to give his principal notice of his having been unable to execute the order for insurance, will make him liable in damages.

6. Unliquidated damages cannot be set off.

7. An agreement to accept bills, renders it unnecessary that the drawee shall have funds in his hands belonging to the drawer.

8. Parol evidence to show facts stated in certain letters received by the witness, will not be admitted; as the letters are higher testimony, and should be produced.

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

The jury were empannelled to try issues in two actions, the one brought to recover the amount of a bill of exchange, drawn by the defendant on a house at Rochelle, in favour of the plaintiffs, for two thousand pounds sterling, and damages, the same having been protested; and the other for the balance of a commercial account. The plaintiffs are merchants residing at London, between whom and the defendant very considerable transactions had taken place, principally in the drawing of bills on each other, and insurances effected in England. on vessels and cargoes, sent by the defendant to England, and to different parts of the continent. Many of the defendant's bills, drawn in the summer and autumn of 1805, on the plaintiffs, were protested; and the defendant having been obliged to pay the damages, to the amount of about two thousand pounds, this is claimed by the defendant as an offset, the plaintiff consenting that the claim may be made in this action. He also claimed the sum of seven thousand pounds of the plaintiff, for not having effected an insurance on the Betsey, as he had been directed to do, and as he had been in the habit of doing on former occasions. This cause was partly tried at a former term, when it was objected by the plaintiffs' counsel, that this claim, if well founded, could not be made an offset. But the court deciding otherwise, a juror was withdrawn, that the plaintiff might have an opportunity of taking testimony, to meet this point. [See Case No. 3,827.] Depositions having been taken, the question relative to this point appeared to be as follows. In consequence of a decision in the case of Kellner v. Le Mesurier (1803) 4 East, 396, declaring that policies made in England upon foreign vessels, seized as prize by any of his majesty's privateers, and condemned, were absolutely void; it had become a practice, in many instances, for the underwriters in London to execute a policy in common form, and to give a separate engagement, which they considered binding on their honour, to pay the losses in cases of captures and condemnations, whether by English cruisers or others. In the summer of 1805, the plaintiffs having been ordered by the defendant to obtain an insurance on a vessel named the Tryphenia, had it effected with this separate engagement, of which he informed the defendant on the 16th of October. In the summer of the same year, the defendant wrote to the plaintiffs, informing them of his intended shipment of a cargo of colonial produce to Antwerp, by the ship Betsey; and desiring him to insure six thousand pounds on the cargo, which he desires may be done "by the most solid assurance." He shortly after directed him to insure one thousand pounds more on the same cargo. The plaintiffs had the insurance effected in the common manner, but no separate engagement to insure against capture was ob-

tained; and it appears, by a deposition in the cause, that the broker who was applied to, to get the insurance effected, was instructed by the plaintiff to obtain, if he could, such a separate engagement. The attempt was made at Lloyd's Coffee-House, but none of the underwriters could be prevailed upon to enter into such an engagement. On the 16th of October, the plaintiffs enclosed to the defendants three separate accounts for the insurances effected upon the Tryphenia, the six thousand, and the one thousand pounds on the Betsey's cargo. In the first, they stated, specially, the separate agreement which had been obtained; but made no mention of it, as to the other insurances. No other notice was given to the defendants, that in the latter case such an agreement had not been obtained. The Betsey was captured about the middle of November, by a British cruiser, and condemned as good prize. On the 3d of July, 1805, the plaintiffs wrote to the defendants, referring to a former letter from the defendants, in which he stated the details of his concern with Anthony De Tastett & Co., of St. Sebastians, which, they say, "we are to support with all our credit. We have written them on this subject, and said that we would honour all your drafts on us, for your account." On the 27th of August, the plaintiffs wrote to the defendant, that they would accept no more of his bills. In many letters from the defendant to the plaintiffs. previous to the letter of the 27th of August. when he mentioned the bills drawn on the plaintiffs, he distinguished between those drawn on account of his connexions with the house at St. Sebastians, which he directed to be charged to them; and those drawn on his own account, which he ordered to be placed to his particular debit. The defendant's counsel offered a witness to prove, that, by the letters of his, the witness's, correspondents in England, they had, in the summer and fall of 1805, effected insurances on his property, with a separate engagement to pay, though the property should be seized by the British cruisers, and condemned. This was objected to, and the court sustained the objection; observing that the evidence was of no higher dignity than hearsay.

Duponceau and Levy, for defendants, contended: First; that the plaintiffs were bound to have the insurance effected upon the cargo of the Betsey, with a separate engagement, as had been done on the Tryphenia; or should have shown, satisfactorily, that they could not get this done. Proof that one broker had made an unsuccessful attempt, is no evidence that others might not have succeeded, if they had been applied to. Second; that even if every proper attempt had been made by the plaintiffs, and had failed, still the plaintiffs should immediately have given the defendant notice thereof, to ena-

ble him to cover his property fully in this country. Third; that the plaintiffs, having engaged to honour the defendant's bills, they were bound to do so; and are liable to pay all the damages arising from their failure.

Mr. Rawle, for plaintiff, on the first point, answered, that no order to insure in the way now contended for, was given; and the plaintiffs endeavoured, as far as they were bound, to obtain such an insurance, but could not do it; consequently they are not liable. Second; the accounts enclosed in the letter of the 16th of October, in one of which mention is made of this separate and special underwriting, and in the other cases no notice is taken of such an agreement, were sufficient to apprize the defendant of the real situation of the cargo of the Betsey, as to the indemnity secured on it. Third; that the undertaking, as to the plaintiffs, to accept the defendant's bills, went only to such as were drawn in relation to his concern with the house at St. Sebastians; that, at any rate, the demand cannot be supported, unless the defendant had shown that he had sufficient funds in his hands, of that house, to authorize him to draw; and at all events, the plaintiffs were not bound to accept any bills drawn after the 27th of August, when they informed him that they would accept no more of his bills.

WASHINGTON, Circuit Justice, delivered the opinion of the court.

The first question arises upon the defendant's claim of seven thousand pounds. The law is clear, that if a foreign merchant, who is in the habit of insuring for his correspondent here, receives an order for making an insurance, and neglects to do so, or does so differently from his orders, or in an insufficient manner, he is answerable, not for damages merely, but as if he were himself the underwriter, and he is of course entitled to the premium. In this case an insurance was effected, valid so far as it went, and had it gone as far as the defendant contends it ought, it would, by the legal decisions in England, have been inoperative and void. But the defendant says, that this ought not to have entered into the consideration of the plaintiffs; that, having ordered such an insurance to be made, it was the duty of the plaintiffs to make it, and to secure to the defendant the chance of an indemnity, though founded only on the honour of the underwriters. To this charge of misconduct, the plaintiff has given two answers: First, that he received no orders to effect the insurance, in the manner now contended for; and, secondly, that he made the attempt to do it, and could not get it effected. The words "solid assurance," contained in the defendant's letters, are certainly equivocal. They might mean such an insurance, as would completely protect the property against captures by British cruisers, the imminent dangers of which were foreseen by the defendant, and acknowledged and dreaded by the plaintiffs, as their letters evince; or they might mean, that the underwriters should be men of solidity, and able to pay in case of loss. It may be proper here to observe, that a claim for damages against an agent, comes with a bad grace from a principal, who complains of a disobedience of orders, couched in ambiguous terms. If, with a reasonable attention to the language, the words would bear the construction which has been placed upon them, it would be too much to condemn him in damages, because, upon a refined and critical examination of them, a different construction should be deemed the correct one. The second excuse depends upon the fact, whether a reasonable diligence was used by the plaintiffs to effect an insurance, as ordered. If it was, they would not be answerable for the want of success which attended those endeavours, even if it were perfectly clear, that the general principle contended for, applies to a case of this kind; as to which we give no opinion.

The next question respects the claim for damages on the protested bills of exchange, which, it is contended, the plaintiffs, by their letter of the 3d of July, undertook to accept. To the court, it appears that that promise was confined to bills drawn on account of transactions which were to take place between the defendant, and De Tastett of St. Sebastians; and this is strongly confirmed by the subsequent letters of the defendant to the plaintiffs; in which he discriminates between those bills which are to be charged to the house at St. Sebastians, and those drawn on his particular account. If so, the defendant is entitled to damages upon those bills only, which are of the former description. But the court do not acquiesce in two of the positions laid down by Mr. Rawle under this head. For, clearly, the plaintiffs were bound to accept all bills drawn on the faith of the letter of the 3d of July, between the date of the plaintiff's letter to the defendant, forbidding any further drafts, and the receipt of that letter by the defendant; until which time, it could not be considered as changing the relative situation of the parties. And secondly; it is of no consequence whether the defendant had or had not funds in the hands of the house at St. Sebastians, unless this had been made a condition of the plaintiffs' engagement to accept; for a man may validly bind himself to accept bills without funds, and if the promise be general, and the transactions fair, he continues bound until a countermand is received.

Verdict for the plaintiff.