COQUARD, RESPONDENT, *v.* WEINSTEIN, ADMINISTRATRIX, APPELLANT.

[Submitted June 11, 1895.   Decided June 17, 1895.]

ACTION FOR MONEY PAID—*Counterclaim—Burden of proof.*—Where, in an action to recover money advanced and due on stock purchased for the defendant, the defendant, for an answer, sets up a counterclaim, alleging that the plaintiff should have sold the stock at a certain price, and neglected to do so, which allegation the plaintiff denies, these pleadings raise a material issue, upon which the defendant assumes the burden of proof.

PRINCIPAL AND AGENT—*Ambiguous telegraphic instructions.*—Where a principal gives his agent telegraphic instructions, fairly susceptible of two constructions, and the agent honestly acts on that construction not intended by the principal, and repeatedly advises the principal of his acts, and the principal well knows of such acts, and of the agent's construction of the telegraphic instructions, yet does not advise his agent of his error. In such case, if loss thereby occurs to the principal he must be held to have accepted the agent's construction, and he cannot afterwards sue the agent for such loss.

SAME—*Same.*—In the case at bar the defendant, in October, telegraphed to the plaintiff as follows: "Sell, for my account, five hundred shares Elizabeth, at market price. Wire the price sold." Next day the plaintiff wrote defendant that the stock was extremely dull and impossible to sell at any reasonable figure, and that he would continue the order until countermanded, and he kept the defendant continually advised of the condition of the stock market and of the decline of the stock in price till the close of the year, but received no further instructions from the latter. The defendant contended that his telegram was a continuing order to sell at the highest price when the sale was made, while the plaintiff thought that the order was to sell only for the price paid at the date of the receipt of the telegram. *Held,* that even if the plaintiff acted upon an erroneous construction of the telegram, the defendant, by his conduct discharged the plaintiff from all liability for such misconstruction.

*Appeal from Third Judicial District, 'Deer Lodge County.*

Action for money paid. The cause was tried before Woody, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff and respondent, a broker at St. Louis, Mo., on or about the 22d of September, 1891, purchased for the defendant 500 shares of the Elizabeth Mining Company stock, for which he advanced $962.50. He sues to recover the money due him for said stock, alleging that no part thereof has been paid, except $395, the proceeds of the sale of 200 shares of the stock sold by plaintiff for defendant, at defendant's request, leaving a balance due of $567.50. Plaintiff also sues to recover $3 for protest fees on a certain draft upon defendant for the aforesaid amount of $567.50.

The defendant, for an answer, set up a counterclaim, alleging that after the purchase of the 500 Elizabeth shares, the defendant ordered plaintiff to sell said stock at the highest market rate said stock was selling in St. Louis; that the highest market rate in St. Louis at the time the order was made was $1.90 per share; that plaintiff sold 200 shares of said stock at $2 per share, realizing thereon the sum of $400, and failed and refused to sell the additional 300 shares at said market price; that by reason of such neglect and failure to sell said 300 shares, defendant was damaged in the sum of $600. Defendant denied that plaintiff paid the $3 for protest fees, as set forth in the complaint.

The replication admits that defendant ordered plaintiff to sell the said stock at the highest market rate said stock was selling for in St. Louis. Plaintiff admits that he sold 200 shares at $2 per share, realizing $400; denies that he refused to sell the said 300 shares at said market price of $1.90 per share; but alleges that immediately upon the receipt of the order to sell the said 500 shares of stock, plaintiff offered the same for sale on open market, and to individual buyers, and endeavored to sell the same, and the whole thereof, at said market price of $1.90 per share; that he was unable to find

purchasers at the market price for more than 200 shares; that the market price declined, and the said price of $1.90 per share could not be obtained upon the sale of said stock, the next day after plaintiff received said order for sale, and that at all times thereafter the market price was under the sum of $1.90 per share, and plaintiff has been unable to sell said stock at said price; that plaintiff has always exercised due care and diligence in attempting to sell said stock at $1.90 per share, offering the same in open market, and to purchasers generally, but has been unable to sell said 300 shares at $1.90 per share.

The case was tried to the court without a jury. At the conclusion of defendant's testimony, plaintiff moved for a nonsuit. This motion was granted, and judgment entered for plaintiff. Defendant appeals.

About October 2, 1891, the defendant telegraphed from Montana to plaintiff, at St. Louis, as follows: "Sell, for my account, five hundred shares Elizabeth, at market price. Wire the price sold." Upon October 3, 1891, the plaintiff wrote the defendant, telling him that his telegram was received "late yesterday after the afternoon call. The stock was extremely dull yesterday, and it was impossible to sell stock at any reasonable figure. I wired you to-day in substance that I had sold 200 shares at $2, and trust to sell the remainder Monday. Will continue your order until countermanded. To-day being a Jewish holiday, and, in addition, a half holiday, business is remarkably dull." Again, on October 9th, plaintiff wrote defendant, acknowledging the receipt of defendant's letter of the 4th instant, and telling him that Elizabeth was very dull, and that 500 shares sold that day at $1.90. On cross-examination defendant was asked if he had not received communications from plaintiff right along, from October 3d until the close of the year 1891, keeping him posted entirely as to the market price of the Elizabeth stock, to which the defendant replied: "Yes, I received some letters telling me about what that stock was. He [Coquard] advised me continually that the stock was declining right along after the 31st of October. I

didn't give him any other or further instructions or write to him concerning the sale of that stock. I never countermanded or considered that I owned the stock." In response to questions propounded by the court, the defendant said he "directed the plaintiff to sell the 500 shares at whatever the market price may be. He sold 200 shares at $2 a share, and he did not sell the other 300. I lost, by reason of his not selling that there 300 shares at the market price, the difference between what he could sell the stock at then and what it is worth now. He has got these 300 shares of stock that belonged to me. I ordered him to sell the stock at whatever he might get. At the time this action was brought the stock had got down to 40c."

The plaintiff's motion for nonsuit was upon four grounds: (1) There is no proof to sustain the allegations and counterclaim. (2) There is no proof in support of the allegation that the highest market price at the time of making said order was $1.90 per share. (3) There is no proof that plaintiff failed or refused or could have sold 300 shares, or any part thereof, at $1.90 per share. (4) There is no proof of the value of the stock at the present time, or as to damage defendant has sustained.

*F. W. Cole* and *H. R. Whitehill*, for Appellant.

*McConnell, Clayberg & Gunn*, for Respondent.

Hunt, J.——A majority of the court are disposed to affirm the judgment of the district court solely upon the ground that the defendant's order for the sale of the stock was to sell for $1.90 per share, and not to sell for any other lower price, and that for failure of any substantial proof tending to show that plaintiff, by the exercise of reasonable diligence, could have sold the 300 shares for said price of $1.90 per share, the motion for a nonsuit was properly sustained. The answer of the defendant expressly pleads that the highest market price was $1.90 per share, and avers that plaintiff neglected to sell at said figure. The replication admits that the highest market

price at the time of the order to sell was as plaintiff pleads, but says it could not be obtained after defendant's order to sell was received, although plaintiff tried to find purchasers at that figure. These pleadings raised a material issue, upon which the defendant assumed the burden of proof. The only direct evidence at all upon the fact that plaintiff could have sold at $1.90 per share, is in his letter of October 9th, wherein he says, "500 shares sold to-day at $1.90," coupled with the admission that plaintiff was a broker on the stock market, and familiar with stock quotations.

The division of our opinions consists in this: My learned associates say that it is too strained an inference to conclude, even on a motion for a nonsuit, that, because a broker knows of one sale of stock at the figure he was directed to sell at, he could have sold his client's stock at an equally high price, and should be held liable for not doing so. They may be correct, but upon a motion for a nonsuit, I think, under all the facts of this case, as developed by the testimony and correspondence, that probably defendant made a bare *prima facie* case of negligence on plaintiff's part. We have therefore determined to rest our affirmance of the case upon a ground on which we are thoroughly in accord, namely, that even if the plaintiff acted upon an erroneous construction of the telegram, the defendant, by his conduct, discharged plaintiff from the legal consequences of any such misconstruction.

The broker appears to have acted honestly and in good faith throughout the whole transaction between himself and the defendant. He interpreted defendant's telegram to sell for the highest market price at the date of its receipt, and acted accordingly. Thereafter the stock fell in price. Of this decline, and of the market price, the plaintiff repeatedly advised defendant, by letters, at divers times between the time of defendant's order to sell up to the close of the year 1891. The defendant never again advised him to sell, but knowingly permitted him to retain the stock, under the belief that his authority to sell was limited to the highest market price at which

it could have been disposed of at the date of the receipt of the original order of sometime previous.

We therefore have a case presented where the defendant contends that his telegram was a continuing order to sell, without limitation as to time or price, except that it be the highest when sale was made, while plaintiff argues that the order was to sell only for the price paid at the date of the receipt of the telegram, and that he had no authority to take less, and that he honestly so construed its directions. The most favorable view of the telegram, from defendant's standpoint, is that it was fairly susceptible of two constructions. Its ambiguities gave rise to this litigation, for the plaintiff, in good faith, acted upon one construction, while defendant has sued him upon another. The want of precision on defendant's part fixes the loss, if any, in such cases, upon the writer of the order, rather than upon his broker. (*Courcier* v. *Ritter*, 4 Wash. C. C. 549, Fed. Cas. No. 3,282.)

Under the facts a further principle governs, which may be stated as follows : Where a principal gives to his agent telegraphic instructions, fairly susceptible of two materially different constructions, and the agent honestly acts upon an interpretation not intended by the principal, yet repeatedly advises the principal of his acts, and the principal well knows of such acts, and of the agent's construction of the telegraphic instructions, but does not advise his agent of the erroneous construction of the instructions, if loss occurs to the principal by the agent's acts under his construction of such instructions, the principal must be held to have accepted the agent's construction, and cannot afterwards sue the agent for any loss which may have occurred by such acts of the agent. (*De Tastett* v. *Crousillat*, 2 Wash. C. C. 132, Fed. Cas. No. 3, 828; Mechem on Agency, §§ 315, 484, 954; Story on Agency, § 74; *Vianna* v. *Barclay*, 3 Cow. 281; *Foster* v. *Rockwell*, 104 Mass. 167; *National Bank of Commerce of Boston* v. *Merchants' National Bank of Memphis*, 91 U. S. 92; *Long* v. *Pool*, 68 N. C. 479; *Pickett* v. *Pearsons*, 17 Vt. 471; *Oil Co.* v. *Montague*, 65 Iowa 67, 21 N. W. 184.)

The defendant should have dissented, during their correspondence, if the plaintiff had disregarded his instructions. Not having done so, his assent to the broker's act in holding the stock must be presumed.

The judgment is affirmed.

*Affirmed.*

Pemberton, C. J., and De Witt, J., concur.